**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

ADAM LANE,                                                                                  PLAINTIFF
ADC #155843

v.                                              4:20CV01067-BRW-JTK

WILLIAM STRAUGHN, et al.                                                      DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Billy Roy Wilson.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **DISPOSITION**

### I.    **Introduction**

Plaintiff Adam Lane ("Plaintiff") is incarcerated at the East Arkansas Regional Unit of the Arkansas Division of Correction ("ADC").    Plaintiff sued Arkansas Division of Correction Dexter Payne, William Straughn, Wardens Jackson, Gaylon Lay, and Emmer Branch, Captains Barden and Randle, Health Service Administrator Gregory Rechcigl, and Doctors Tracy Bennett and Gary Kerstein, in their personal and official capacities.    (Doc. No. 2 at 1-4).    Plaintiff's claims against Defendants Payne, Jackson, Lane, Barden, Randle, and Rechcigl have been dismissed, as have Plaintiff's Covid-19-related and syphilis-related medical claims. (Doc. Nos. 8, 16, 44, 45). Plaintiff's corrective inaction claims against Defendants Straughn, Lay, and Branch    (collectively, the "ADC Defendants") remain pending, as do Plaintiff's deliberate indifference to medical needs claims against Defendants Bennett and Kerstein (collectively, the "Medical Defendants").

The ADC Defendants have filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts on the merits of Plaintiff's claims. (Doc. Nos. 54-56, 61).    The Medical Defendants also have filed a Motion for Summary Judgment, Brief in Support, and Statement of

2

Facts on the merits. (Doc. Nos. 57-60).   Plaintiff has filed one response, which the Court construes as a Response to both Motions.   (Doc. No. 60).

## II.    Plaintiff's Complaint

In his Complaint, Plaintiff explains that on March 26, 2020 he filed a sick call for "swollen lymph glands, constant migraines, loss of vision, dizzy spells, and tremendous pain and suffering." (Doc. No. 2 at 6).   That same day, Plaintiff spoke to Defendant Bennett, who noted "lymphadenopathy along left posterior cervical chain but nothing was done." (Id.).   Plaintiff said he suspected he was suffering from syphilis or Covid-19, but "was denied medical treatment and [was] escorted back to [his] cell." (Id. at 6-7).   Plaintiff was seen by Defendant Bennett again on April 6, 202.   (Id. at 7).   Defendant Bennett prescribed Plaintiff Tylenol for Plaintiff's pain, but only told Plaintiff to "go to sleep" when he again told her he thought he was suffering from syphilis or Covid-19.   (Id.).   When Plaintiff filed another sick call, he was referred to Defendant Kerstein   (Id.).   Plaintiff again complained that he believed he was suffering from syphilis or Covid-19.   (Doc. No. 2 at 7).   Defendant Kerstein explained to Plaintiff that his symptoms likely were related to a problem with Plaintiff's tooth; Plaintiff disagreed.   (Id.)   Defendant Kerstein then purportedly became angry and terminated Plaintiff's visit.   (Id.)   Plaintiff filed grievances regarding his medical treatment and corrective inaction as to Covid-19 protocol, and attached grievances to his Complaint.   (Id. at 7-9, 11-38).   Plaintiff tested Covid-19 positive on June 11, 2020.   (Id. at 8).   Plaintiff seeks compensatory damages and injunctive relief. (Id. at 10).

### III.     Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).   "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"   Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).   "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.   Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."   Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas.   Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

4

## IV.    Analysis

Plaintiff filed a Response to the ADC Defendants' Motion and Medical Defendants'

Motion.    (Doc. No. 60).    But in his Response Plaintiff did not controvert any material fact set

forth by Defendants' in their statements of undisputed material facts.   (Doc. Nos. 56, 59, 60).

Plaintiff only generally objects to Defendants' Motions, stating "the record reflects multiple

constitutional violations, deliberate indifference, lack of professionalism and a disregard for the

health and welfare of inmates (Plaintiff) in the [ADC]," and similar general argument.    (Doc. No.

60).    Because Plaintiff did not controvert any material fact submitted, all material facts submitted

by Defendants (Doc. Nos. 56, 59) are deemed admitted.    Local Rule 56.1(c); FED. R. CIV. P. 56(e).

### A.     The Medical Defendants Motion

Defendant Kerstein is a physician at the East Arkansas Regional Unit.    (Doc. No. 59 at ¶

2).   Defendant Bennett is an Advanced Practice Registered Nurse employed as a Mid-Level

Practioner/Provider at the same Unit.    (Id. at ¶ 3.)   In support of their Motion, the Medical

Defendants submitted certain of Plaintiff's medical records.    Plaintiff has not contested the

records.

The records reflect that on March 26, 2020, Defendant Bennet saw Plaintiff in the Health

Services office for a chronic care visit in connection with Plaintiff's asthma.    (Doc. No. 59-1 at

2-3, 23-24).   The encounter notes reflect Plaintiff complained of "recent head cold with clear

runny nose, frontal headaches, scratchy throat, and neck pain . . . possibly some fever and malaise."

(Id. at 23.)   Plaintiff denied coughing and reported a long history of asthma.    (Id.)   Defendant

Bennett noted

> hearing grossly intact; ear canals patent w/o edema or erythema; left TM with clear
> effusion and bulging; right TM with good cone of lint; TMS with no erythema or

> edema bilaterally.   Nares-patent but with edematous and erythematous bilaterally.
> Throat: normal mucosa, palate, and posterior pharynx without exudates, erythema,
> or edema.   Lymphadenopathy noted along left posterior cervical chain.

(Id. at 23-24).   Defendant Bennett scheduled a follow-up visit in two weeks to evaluate lymphadenopathy.   (Id. at 24).   Plaintiff did not complain of dental problems during his March 26, 2020 visit with Defendant Bennett.   (See Id. at 23-24; Doc. No. 59-2 at 1-2).

On March 31, 2020, Plaintiff submitted a health service request form in which he described his problem as an "infection in [his] tooth, causing pain – n – swollen in [his] jaw – n – neck with migraines."   (Doc. No. 59-1 at 4).   On April 2, 2020, Plaintiff saw a non-party provider about an "infection in [his] tooth."   (Id. at 22).

On April 6, Plaintiff saw a different non-party provider complaining that he needed "a physical having frequent mygrane, fever, upset stomach, loss of appetite, vomiting, [which] has been going on for 2 week also swollen [lymph nodes], ear infection."   (Doc. No. 59-1 at 21).

The records further reflect that Plaintiff refused his April 9, 2020 follow up visit with Defendant Bennett in the health services office.   (Id. at 6, 20-21).   Defendant Bennett did see Plaintiff again on the afternoon of April 9, 2020, but she visited his cell.   During that visit Plaintiff "reported flu like symptoms; he refused follow up visit today; guard staff escorted this provider to cell.   Pt report[s] headache for the past several days and swollen lymph nodes for 1 month."   (Id. at 20).   Defendant Bennett observed Plaintiff's hearing was grossly intact, he had no nasal drainage, his throat presented with "normal mucosa, palate, and posterior pharynx without exudates."   (Id.).   Defendant Bennett also noted lymphadenopathy.   (Id.).   She was not aware at the time of Plaintiff's dental issues.   (Doc. No. 59-2 at 2-3).   She ordered x-rays, lab work, and a follow up in one week, among other observations.   (Doc. No. 59-1 at 7, 20-21).   A basic

metabolic panel and CBC with differential/platelet were run; there was no clinical need for follow up.   (Id. at 11-12).   Plaintiff also had a nonvascular ultrasound of the left neck which revealed "[p]ossible pathology enlarged lymph node in the left neck.   Further correlation with postcontrast CT scan of the neck advised for further characterization."   (Id. 14).   Based on this finding, Defendant Bennett scheduled a follow up appointment for Plaintiff within five working days.   (Id. at 7).

Plaintiff then saw Defendant Kerstein in a telemedicine appointment on April 20, 2021. (Id. at 15-16, 19).   Plaintiff noted "migraines on and off last 2 years.   Bad tooth left lower jaw which he things may be causing current head aches and swollen lymph nodes."   (Id. at 19). Defendant Kerstein also noted that Plaintiff "believes he needs a tooth pulled on lower left side." (Doc. No. 59-1 at 19).   Defendant Kerstein prescribed antibiotics and ibuprofen, and a follow up appointment and a dental evaluation.   (Id.).

On April 22, 2020, Plaintiff saw another non-party provider, a dentist.   (Doc. No. 59-1 at 18-19).   The exam revealed Plaintiff had an abscessed tooth and extraction was recommended. (Doc. No. 59-1 at 18).

On April 27, 2020—roughly a week after Plaintiff began taking antibiotics—Plaintiff saw a non-party provider for a sick call.   (Id. at 17-18).   Plaintiff complained that his "lymph nodes [have] been hurting for 2 months or more and they [are] swollen . . . [have] been having migraines for 2 months or more."   (Id. at 17).   Plaintiff insisted he had an STD that was not treated properly in the past.   (Id.).   The provider noted "negative lymphadenopathy, no thyroidmegaly, lymph nodes not palpable, no rigidity, no swelling, good ROM."   (Id. at 18).

Also in support of the Medical Defendants' Motion, they submitted the declaration of Joseph Hughes, M.D., who was asked to provide his opinion as to whether Defendants Bennett and Kerstein failed to provide Plaintiff proper medical treatment in connection with his lymph nodes.   (Doc. No. 59 at ¶ 4; Doc. No. 59-3).   Dr. Hughes explained that the care Plaintiff received was appropriate, and why.   (Doc. No. 59-3).   Of particular note, Plaintiff's abscessed tooth was located in the area of his swollen lymph nodes, and after a week of antibiotics, Plaintiff's lymphadenopathy had resolved.   (Id.)   Dr. Hughes opined that Plaintiff "received excellent care all around."   (Doc. No. 59-3 at 3).

Plaintiff maintains the record reflects that he did not receive appropriate care.   Based on the evidence, the Court cannot agree.   Plaintiff's medical complaints were promptly addressed. He underwent testing, saw various providers, and received dental care.   Plaintiff may have preferred a different course of medical action.   But as the Court of Appeals for the Eighth Circuit has explained, "mere disagreement with treatment decisions . . . does not rise to the level of a constitutional violation."   Cejvanovic v. Ludwick, 923 F.3d 503, 507-08 (8th Cir. 2019).   As such, summary judgment in the Medical Defendants' favor is appropriate.

### B.      The ADC Defendants Motion

Plaintiff alleged the ADC Defendants failed to take corrective action in connection with Covid-19 at the Unit and Plaintiff's medical care.   Because the Court found no underlying violation as to the medical care Plaintiff received (and Plaintiff's Covid-related medical claims already have been dismissed), Plaintiff's corrective inaction claim on this issue fails.   Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993) (defendant "cannot be liable for 'corrective inaction' where there were no constitutional violations to correct").

As to Plaintiff's remaining claims, Defendants argue they are entitled to qualified immunity. (Doc. No. 55 at 4). Qualified immunity may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

Plaintiff alleged corrective inaction in connection with Covid-19 protocol. The record reflects that Defendant Straughn implemented multiple Covid-19 policies for the safety of staff

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

and inmates, and has personally seen the implemented policies in action—including at the East Arkansas Regional Unit where Plaintiff was housed.   (Doc. No. 56 at ¶¶ 10-19; Doc. No. 54-1 at ¶¶ 4-15, 18).   Defendant Straughn has "not received any correspondence from [Plaintiff] regarding Covid-19 . . . other than [Plaintiff's] grievance."   (Doc. No. 54-1 at ¶ 16).   Defendant Straughn denied Plaintiff's appeal of Grievance EA-20-00544 on June 17, 2020.   (Doc. No. 61-2).   The Grievance complains of the medical care Plaintiff received, but does not mention Covid, Covid protocol, or violation of Covid protocol.   (Id.)

Defendant Straughn also denied the appeal of Plaintiff's Grievance EA-20-00631.   (Doc. No. 61-3).   In Grievance EA-20-00631, Plaintiff complained about Covid-19 and the Covid-19 protocol, but Plaintiff does not allege any particular individual was violating protocol or violating Plaintiff's rights.

Defendant Straughn denied Plaintiff's appeal of Grievance EA-20-01318, too.   (Doc. No. 61-4).   Plaintiff alleges in this Grievance that there is insufficient ventilation in ISO-2, that it is extremely hot and hard to breath, which puts inmates at risk for Covid-19 exposure.   (Id.)   Plaintiff says he informed "Warden Jackson, Major Randle . . . Warden Lay, Dycus, n Branch to Dexter Payne and William Straughn to this day nobody has done anything to correct this situation."   (Id.)   Even if the conditions were found to violate Plaintiff's rights, the Defendants are not liable without a finding that reasonable correction officers would have recognized the ventilation constituted an unlawful condition.   See Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotation omitted).   The law, as it existed at the time of the events giving rise to this lawsuit, "must have placed the statutory or constitutional question beyond debate." Dillard v. O'Kelly, 961 F.3d 1048, 1052 (8th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Plaintiff's Grievance EA-20-01318 was received on June 8, 2020.   (Doc. No. 61-4 at 1). By that time Warden Straughn already implemented policies to address Covid-19 at the EARU. (Doc. No. 54-1 at ¶ 7).   These policies included: visitor and staff screening for Covid-19 symptoms; recommending hand washing; use of face masks; avoidance of non-essential physical contact and sharing of personal items; and maintaining distance from others, among others.   (Id. at ¶¶ 8-12).   The Court notes that the hand-washing poster placed in the Unit was from the Centers for Disease Control and Prevention.   (Id. at pp. 7-8).

Plaintiff did not allege in Grievance EA-20-01318 that he was housed with inmates known to be Covid-19 positive.   He did not allege in Grievance EA-20-01318 that EARU staff were disregarding the policies Defendant Straughn implemented.   Further, the June 7, 2020 response to Grievance EA-20-01318 reflects that "the vents [have] been removed from isolation.   This should address your concern." (Doc. No. 61-4 at 4, 9).   Some action was taken in response to Plaintiff's complaints.   Plaintiff did test Covid-19 positive while in isolation.   (Id. at 4).   But at the time Plaintiff raised his concerns, there was no clearly-established right as to prison ventilation and Covid-19 protocol.   Accordingly, Defendant Straughn is entitled to qualified immunity. This same analysis holds true for Defendants Lay and Branch.   (Doc. Nos. 54-2, 54-3).   Even if there was a violation, there was no clearly established right.   As such, the Court finds Defendants Lay and Branch also are entitled to qualified immunity and recommend the ADC Defendants' Motion for Summary Judgment be granted.

As a closing note, Court again acknowledges Plaintiff's general objection to both pending Motions for Summary Judgment (Doc. Nos. 54, 57, 60).   But at this stage, Plaintiff was required to meet proof with proof.   To survive summary judgment, Plaintiff's allegations had to be

supported by evidence creating a genuine issue of material fact.   Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor).   Plaintiff, however, failed to contest Defendants' undisputed material facts (Doc. Nos. 56, 59) and otherwise has not come forward with evidence supporting his claims.

## V.      Conclusion

IT IS, THEREFORE, RECOMMENDED that

1.      The Motion for Summary Judgment filed by Defendants Bennett and Kerstein (Doc. No. 57) be GRANTED;

2.      The Motion for Summary Judgment filed by Defendants Branch, Lay, and Straughn (Doc. No. 54) be GRANTED; and

3.      Plaintiff's Complaint (Doc. No. 2) be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 13th day of October, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE